The first case on our docket this morning is 514-0197, Woody v. Willaredt et al. And it looks like the attorney for the appellant is Amanda Verrett. Why don't you all take your seats and prepare. And are you better off sitting? You do not have to stand. If at any time you feel you need to sit, please let us know. I'm sure Larry will help you with the chair. Or if you need to stay there, you may stay there. Okay. Then we'll begin with Ms. Verrett. Am I pronouncing that correctly? It's actually Bradley Verrett. I'm going to be dropping the Verrett on these days. Okay. Bradley Verrett. I apologize. It's okay. Then you may proceed when you're ready. May it please the court. Counsel, I represent Michael Woody. My client is a Native American and possesses a Shinian monitor. He's been cited for violating a criminal ordinance in the city of Granite City and fined $100. There are five issues on appeal before this court today. The first, the doctrine of exhaustion of administrative remedies, which does not apply. The second, that my client possesses objects of his worship, which are federally protected. The third, that Mike has a right to possess his little spirits, his Shinian monitor, as protected by the Illinois Religious Freedom Restoration Act. The fourth, that his rights to possess his little spirits are further protected by the U.S. Constitution. And fifth, that the search of his backyard in September of 2011 was done without a warrant and all of the evidence gained therein should be barred as fruit of the poisonous tree. The defendants brought a motion to dismiss this appeal for lack of jurisdiction of this court, citing that we have failed to exhaust all administrative review. Their motion should have been brought at the time the amended complaint was brought, after this court had ruled in September of 2013, or when this complaint was again amended in March of 2014, or possibly when it was appealed in May of 2014. They have waited two and a half years to file it. It has now been nearly four years since my client was cited to bring this motion. It is simply too late to bring this complaint. Furthermore, as I will argue in a moment, the ordinance as applied to my client, and facially, is unconstitutional. It is futile for him to apply for a special abuse permit, as they argue, or special exemption permit, as they argue, despite a special exemption permit being applied for him. And fourth, he is not required to seek multiple remedies. This is a quasi-criminal proceeding on appeal today. He was cited. He was fined. He was told to get rid of chickens, of crime animals. He doesn't possess chickens. He doesn't possess crime animals. He possesses something that is a part of his faith. He worships with them. He possesses a Shinian monothe, little spirits. They want him to seek a civil remedy to get rid of a criminal fine. He is not required to seek every available remedy, a different course of action, before proceeding to court. At the bottom of the paper they gave him of the court order in October of 2011, it said, if you wish to appeal, you must go to Madison County and file your notice of appeal within 35 days. That was the only remedy open to him in November of 2011. But, as I understand it, there would be no remedy available to him, even if he went to the next step that they're claiming he should go to. That would only be a six-month stopgap, if you will. That's correct. So, is there any procedure or any remedy within the city's framework that would allow your client to apply and continue his worship on a permanent basis? Not that I can find within the Granite City ordinances. He would either have to reapply every six months, move out of town, or get rid of the objects of his spiritual worship. Those are his choices. Okay. Thank you. But he doesn't need to apply for something that's part of his spiritual worship. What he possesses is something outside of the ordinances. Furthermore, a special exemption permit is for a change to your property. These are not affixed to his property. And, turning to my second issue, these are federally protected objects of his worship. My client is a Native American. Under the American Indian Religious Freedom Act passed by our Congress, he is entitled to possess the objects of his worship. Our Congress said, after many years of the treatment of our Native peoples, that they are going to be given rights to possess the objects of their worship. At hearing in October of 2011, despite the scant notes. Well, it's a problem, isn't it, that we don't have a record of that hearing? That is correct. We are stuck to the record that was presented in October of 2011. Well, there was no verbatim transcript. However, the Supreme Court rules do provide for remedying that with either a bystander's record or an agreed statement of facts. That has not been done here. That is correct. So we have no record of what happened in those proceedings. Right. And these are factually driven issues. There are certain things your client had to prove at that hearing to assert his religious beliefs. Do you agree with that? Absolutely. And the rule is, if there's no record, we are to presume that the trial judge, the hearing officer, made the correct decision on the facts. So what are we supposed to do about that? Well, if you turn to the appendix that's attached, he did present evidence as to his religious faith. Turning to A2, A3, A4. Are you talking about the notes? Yes. Can that possibly substitute for a record on appeal? Yes, it can. How does it do that under the Supreme Court rules? That was a record that was presented, and looking at it in the light least favorable to my client, that was what the defendants heard. The defendants heard that my client was a Sioux St. Marie Chippewa Indian, a Native American, that he presented information about the Native American Religious Freedom Act, that he has the federal law trump the state law, and that he has the right to practice his religion as he sees fit. And that was the facts that he presented. Well, I mean, we can't determine from that whether he was sworn and testified to any of that. Those notes could have been made just from statements being made. We don't know what those notes mean. I mean, what are we supposed to do about that? I mean, throughout your brief, you cite to your memorandum in the circuit court for all these facts about his  But there's no record of any evidence being produced on any of that anywhere for us to review. To cite to the memorandum I cited to what had been presented to this court in the spring and summer of 2012-2013 on the first appeal. So that's where those facts were adduced from. We review the decision of, in this case, the administrative agency, the hearing officer. We don't review the decision of the circuit court. And previously, we just remanded it to the circuit court for a hearing, for review, right, because it had been dismissed as untimely. Correct. Correct. And you wrote that the finding was that it had been dismissed as untimely and that he was given the right to amend it, add the correct defendants, and get it served. And have circuit court review, which at that time, someone could have, you know, worked on trying to get a bystander's record or an agreed statement of facts so that there would be some kind of report of proceedings for us to review. Even, again, taking the facts as the least favorable to my client. As stated by the defendants, he has presented information about his fate throughout and starting at the October 2011 hearing. Okay. I mean, go ahead and make your argument. But I'm just asking you, what are we supposed to do about that when we have no record that any of this evidence was actually produced? I think, again, you go to the notice that was made by the defendant at the time of the hearing. By the defendant? By the hearing officer. Yeah, by defendant hearing officer, contemporaneous with the hearing, that says he presents information and the attachments that were given to him to present information at the hearing and that have been presented throughout. And I realize that some of the reproductions are not the clearest ones that have been presented as attached to it. Do you have any case or can you have any authority that the notes of a hearing officer or the notes of a trial judge can substitute for a record on appeal? No, I do not, but I can brief the court on the same. Well, I mean, you can always request after oral argument to cite additional authority. You have to file a motion to do that. I'll be surprised if you find anything that says that, but anyway. Turning to my third argument, under the Illinois Religious Freedom Restoration Act, in 1998, the Illinois legislature clearly divorced the jurisprudence under the Illinois Constitution from claims under the federal constitution. It was a clear pronunciation of the Illinois legislature that our rights as Illinois citizens are sacred and that they deserve the highest protection of Illinois law. Under 775 I-3510, it was a clear pronunciation that the Sherbert and Yoder standard is the correct standard to adjudge our rights under the Illinois Constitution for our right to exercise our faith. It reestablished the three-pronged test, and it puts the burden upon the government in most part. The three-pronged test is as follows. The first prong is the compelling interest, and it is a two-part test.  The defendants urged reliance on tabor, in which a member of the sheep faith was forced to give up her blade or be fired. Members of the sheep faith must wear a blade as part of their faith. There were questions about how long a blade she must carry, and must she carry one at all. Once it was determined that there was sincerity in her belief, the questions stopped. No one has questioned the sincerity of my client. We are stuck with the record of October of 2011. My client has persisted through two appeals in nearly four years. Once the sincerity is met, the inquiry stops. Furthermore, the defendants admit that my client has a deeply held belief, sometimes, but they wish to continue the questions into his sincerity. How do they question that? Well, they question, should he have another animal, another bird, or something else altogether? The answer is no. My client has that which his faith requires, consulted with his tribal elders. He prayed, and this is what his faith requires. It's, again, akin to taking away the crucifixes of Christian faith and saying, here's something else we should put down. The second step is what is the burden posed on the practitioner? My client is doubly burdened. He is told to get rid of the objects of his faith and to pay a fine. Under one reading of the Granite City Code, the fine rate is $100 per day. As of last night, or this morning, he has $141,000 in principal balance, $24,000 in interest. Under the other reading, it's $135.25, going at $0.75 per month. That is a burden, to pay for the right to practice your faith and to be told to get rid of it. The second problem, what is the compelling interest for the ordinance? This was defendant's burden. It was defendant's burden to show in October of 2011. They controlled the hearing. It was their hearing to make. They could have recorded it. They could have made notes. It was their hearing at the time. Through their arguments to this point. Are you saying that just because the defendant had the burden that it was their burden to make the record? Correct. They could have asked to continue it. They could have, at that point in time when they realized that my client was making constitutional claims, they could have said, can we continue this matter and we'll come back on another day? Well, isn't it equally as important to your client that a record is made so that in the event of an appeal, as Justice Stewart has mentioned, the court has something to look at? Absolutely. I mean, it's just as easy that you can, you meaning your client, could have had a court reporter there or some means of recording. Yes. Right? Yes. So when you talk about burden on the city, it seems that the burden is really more what is their compelling state interest, right? Correct. And what justifies them trying to prohibit your client from having the objects of his worship? And they state that their compelling interest is the protection of the people of Granite City. The chickens are dirty and smelly. Well, you would agree that a city does have an interest in maintaining the health and welfare of their citizens, correct? Yes, absolutely. And there are some animals that would clearly pose a danger to the citizens of any city if, for example, a poisonous snake was being used, correct? Correct, or a gorilla. What would you say about a gorilla if a gorilla was being used as an object of worship? At what point do you balance there? Since you brought up the gorilla, we'll use that. I think you have to step through the three prongs and ask, has the city met its burden for the compelling interest, and how then do you turn the least restrictive means? And I think that's where you go, is can there be a happy medium of how do you let the person worship with their gorilla? And protect the citizens of the city. Maybe we have a gorilla cage that the gorilla can never ever get out of. So your argument is that there's an accommodation. There could be an accommodation. I mean, cities accommodate people all the time in different ways. That's correct. I was not clear from what information we did have. I was not clear how your client had the chickens. It sounded to me like when the police did this search, they went through two doors. I'm not sure what the doors were, how the chickens were actually maintained. So he has a gate that leads to a side yard, and then there's another gate that leads to the backyard where the garden and the chickens were. Does that make more visual sense? It's kind of an L-shaped property. No, but so the chickens were not, you couldn't get to the chickens but for going through two separate gates? Correct. Were they visible from the street at all despite the gates? No. Could you hear them from the street despite the gates? I mean, somebody made a complaint. Yes. Yes, at that point in time when the city came out to fix the street, yes, they had riled them up and you could hear the squawking and the clucking of the birds in the backyard. And how many were there? I believe at that point in time there were a dozen. Okay. Somehow I got the number three in my mind, but that's okay. You think there were a dozen, and does he use a dozen generally for his worship? I believe the dozen is approximately what he usually has. Okay. Thank you very much. So, again, the city's burden is to advance compelling interests. They advance the safety and welfare of the people and that these birds are dirty, they're smelly. They cite a couple of websites, and just like any other animal, you have to handle it and you have to clean up behind it. And you should probably wash your hands and be clean and dispose of its waste properly. And the main risk is you, you the person who handles it, and you should probably wash your hands after you get done handling it. Unlike a gorilla who could get out and maul people, you should just simply wash your hands afterwards. They advance a mere rational basis, which is insufficient when you are talking about a highly protected constitutional right. It is their burden to show that they have more than a mere rational basis. What did I have? You'll have time to give us a few more remarks after the appellee argues. But thank you. Thank you. Take your time. Please don't fall. There's no place. Huh? I could go to the council. I just want you to be careful. Okay. Is it Ms. Andrews? Ms. Andrews? Good morning, Your Honors. May it please the Court. My name is Laura Andrews, and I'm Assistant City Attorney for the City of Granite City. Michael Woody wants to keep his sacred options. The City of Granite City is obliged to try to protect the people living in nearby properties. Mr. Woody has the right to his beliefs and his freedom of religion. We all do. He does not have the right to expose his neighbors to the dangers associated with chicken waste. None of us do. The City doesn't want to deprive Mr. Woody of his ability to worship. However, the City does want to prevent him from trampling on the rights of others. The intent of the ordinance prohibiting farm animals in Granite City is to prohibit backyard barn yards. And the accompanying noise, smell, insects, waste runoff, and possible disease. Granite City Ordinance No. 6.24.070 is facially neutral in a general application. It's without any purpose to suppress religion. It advances a legitimate governmental purpose and does not target religious conduct for distinctive treatment. In my argument, I have to refer to Mr. Woody's sacred objects, which actually retain the physical properties of chickens. But I also have to refer to secular chickens. And if I accidentally call Mr. Woody's sacred objects chickens, I don't mean that as an offense to him or disrespectful. It's merely a mistake. Can I interrupt you? Justice Stewart was asking about the record that was kept in this case. And in your brief, there's a reference to the United States Centers for Disease Control and Prevention website, which talks about how chickens transmit salmonella and histoplasmosis and they harbor parasites and all of that. Was that produced at any time in a hearing? Are we talking in your brief now about something that wasn't put before the court? It's not part of the record. That was part of the rationale in the city in enacting the ordinance. So you're giving us this for the first time in your brief? Correct. Okay. And it's difficult for us, I think, generally, because if it wasn't put before the court, I mean, we're not the considerate. You understand that? I understand. And yet it makes a good argument, but I needed to clarify whether it was part of what was introduced. I understand. I didn't mean to interrupt, but I'm sorry to interrupt your train of thought. Let me ask a question while we've got you interrupted here. On this $100 fine, I mean, when I look at the order, it just says $100 fine. It doesn't say an additional $100 a day. What's your position on that? There is a provision in the ordinance that when someone has a fine, an ongoing violation of the ordinance may result. So it's a discretionary? It is. And at this point, nothing's been assessed other than a $100 fine one time? Correct. So there's potential, I guess, still for that to occur? Is that what the city's position would be? It's possible, although unlikely. Well, how would that work? You had a finding of guilt on the ordinance violation, so you would continue to bring him back for continuing violations. You'd issue another ticket? How would that work? You'd issue another ticket, you'd issue another ticket. For each day, you mean? No, it would just be the one ticket. But how does that work if he's already been adjudged and an order entered? On the $100 each day? Yes. How would you ever get him before the court or a tribunal for an additional judgment to be entered on additional fines? The ordinance seemed very confusing to me on the fine issue. It's ambiguous to me. I agree. And I have never seen anyone assess the additional $100 each day, only the initial fine. Well, the judgment that was entered is clear. It's a $100 fine. Period. And the hearing officer could have at that time said, $100 fine and an additional $100 for every day you're not in compliance, but that discretion was not exercised. So, I mean, not to try to decide something in advance here, but it looks to me like it's a $100 fine. Period. Oh, I agree. Okay. Go ahead. Application of the Illinois Religious Freedom and Restoration Act allows this court to affirm the hearing officer's finding that Mr. Woody violated the Granite City Ordinance. If an individual has a sincere religious belief, the government may not impose a substantial burden on that person's exercise of religion unless it demonstrates that the application of the burden furthers the compelling governmental interest and is the least restrictive means of furthering that interest. Michael Woody has to prove the sincere religious belief. It is not merely a matter of personal preference, but one of deep religious conviction shared by other members of his faith. Like in the Yoder case, where the Amish community believed that compulsory high school attendance was in violation of their faith. The record in that case clearly supported Respondent's claim that enforcement of the law would endanger the exercise of their religious beliefs. However, in the case before the court, additional information would be needed about exactly what is the specific religious belief. There's no evidence regarding the number of sacred objects needed or whether they, in fact, must be chickens. The record just simply doesn't have this information. There's no record. That's correct. Plaintiff must also show that the ordinance is a substantial burden. To do this, he has to prove that the challenged governmental action truly pressures him to significantly modify his religious behavior. A substantial burden. One example is if the state denies a benefit based on a person's religious belief. Like in Sherbert v. Verner. But Sherbert's a seventh-day Adventist. She's prohibited from working on Saturday. She gets fired from the job. She gets denied unemployment benefits. And the U.S. Supreme Court said that the disqualification on her benefits pressured her to forego her religious practice. The Greenwich City Ordinance prohibiting the keeping of firearms in the city does not rise to the level of a substantial burden. The ordinance is a common, reasonable zoning regulation traceable to legitimate municipal goals. The ordinance is consistently and neutrally applied and does not require plaintiff to violate a belief mandated by his religion. Once plaintiff proves that he has a sincere religious belief and that there's a substantial burden on that belief, the government must show a compelling interest. The compelling interest of Greenwich City Ordinance is served, well, Greenwich City Ordinance serves the compelling governmental interest. Because protecting the health and safety of the citizens is paramount responsibility of the city. Chickens in residential neighborhoods can pose a threat to public health, safety, and wealth. They can attract insects, flies, cause noxious smells, make noise. Feathers and particles of droppings can become airborne and travel to nearby properties. Chickens and other farm animals create issues of runoff of feces and urine. And that attracts bugs and worms. Excuse me again. What exactly was Mr. Woody charged with? Keeping farm animals in the city. Okay, because I was confused about this letter that was in the brief about a notification from the city that he was in violation of the Code on Debris on Property. That is a different issue. Mr. Woody has had several issues with the city. That's not the law. It's hard to tell from the administrative order which one we're talking about. I want to make sure that the debris on property is out of it. Okay, all right, great, thank you. Yeah, the judgment says, it's a forum judgment, charge or code violation, and then written under that is farm animals on PROP. Is that what that means? I couldn't read that. My understanding is there were some other charges, but they were dismissed before the hearing about debris. I believe the other charges, various charges came at various times. I don't feel comfortable saying what they are, but this is not the only problem. Okay, I couldn't read that. Justice Stewart is much better at it than I am. I have really bad handwriting, so I'm used to it. Thank you very much. The conduct at issue in this case is the keeping of farm animals in the city. And it's the ordinance. And it's particularly directed to preventing the conduct of keeping animals in the city. It's not enacted for the purpose of targeting any members of religion. It doesn't selectively impose a burden on conduct motivated by religious belief. It's pursued by the city the same to non-religious conduct as to religious conduct. It restricts harm of the same sort. The ordinance is uniformly applied. And the application of the ordinance to Mr. Woody in this case furthers the compelling governmental interest. The city also has the responsibility of showing that then. The ordinance is the least restrictive means of furthering the governmental interest. And this is shown when the government demonstrates that no alternative form of regulation would serve the purpose. The implementation of the current Grand City Ordinance is the least restrictive means of serving the city's interest. There is no other way to protect the citizens from dangers caused by chickens and other farm animals living in residential neighborhoods except to prohibit and limit the keeping of these animals. The alternative of making a provision in the ordinance that allows individuals with the same religious beliefs as Plano to keep the chickens as sacred objects is unfeasible. Because it not only undermines the city's efforts to combat possession of farm animals, but creates law enforcement problems because officers who are enforcing the ordinance have no way of determining a person's religious beliefs. The Plano also claims that his constitutional rights were violated, but they were not. A law violates pre-exercised laws of the First Amendment if the purpose or effect of that law is to impede the observance of one or all religions or discriminate between religions. The Grand City Ordinance is neutral of general application. It does not target religious exercise, so it is not subject to strict scrutiny. It is not subject to strict scrutiny. It is subject to the rational basis test. Talk to me about the officer's entry into the home. The better practice would have been to wait for a search warrant. I agree. Does that mean that the evidence should be suppressed in a quasi-criminal proceeding such as this? No. Well, did anybody file a motion to suppress? No. The issue wasn't raised before the hearing officer, was it? No. As far as we can tell. So, isn't it waived? Yes. When the officers entered on the driveway, they could hear what sounded like chickens in the backyard. The better practice would have been to get a warrant and wait before going in. They didn't do that. But as Sister Stewart said, it's waived. Yes. Okay, so we can move on. The Grand City Ordinance is written to strike a balance between the rights of the individual and the rights of the many. If a resident has unique circumstances which call for an exception to the strict application of the Zoning Code, that person can and should ask for a special use permit. Mr. Woody has unique circumstances. The city didn't anticipate that a citizen would have a religious practice of keeping chickens as sacred objects. But the writers of the ordinance knew that it was not possible to anticipate and list every possible set of future circumstances. And this is why we have the special use provisions. The permit can make specific provisions for the protection of neighboring properties, such as the keeping of the waste cleaned up, which was actually the most important part. I need to clear up the question that there was regarding the six-month special use permit. There are two types of special use permits in the Grand City Ordinance. One is for land use, which is this one. And the other one, correctly as stated by Council, is for building. It is the building one that has the six-month limit, not the land use one. So if a special use permit were granted, it would be permanent? Permanent as long as it's Mr. Woody that lives there. In your brief, you say there's no less restrictive alternative which could achieve the same goals without affecting the rights of the plaintiff. So I thought you were conceding that the six months was the problem. I'm sorry, I don't understand the question. In your brief, the city said there is no less restrictive alternative which could achieve the same goals without affecting the rights of the plaintiff. By that, I meant that the ordinance prohibiting farm animals. There was no less restrictive alternative than having that ordinance that prohibited the farm animals. Now, it wasn't to do with the six months. So there is a special use permit dealing with land that would allow for a longer term. Yes. The special use permit that I was talking about in the brief is for the land use, and it isn't limited by the six-month limitation. Do you see that as the accommodation that the city could give to the plaintiff here? I do. Okay. And, you know, you filed a motion to continue the oral argument because, and alleged that there was going to be a hearing the 3rd, September 3rd. Correct. The day after tomorrow, there will be a public hearing regarding the special use permit. And if that's granted, then, you know, are you going to go in and ask that the conviction be vacated or what's going to happen? I am. That will be my recommendation. And if that happens, then you're going to file a motion to dismiss the appeal as moot? Yes. Just asking. I mean, you filed, it was just in the form of a motion to continue before, you know, so. Right. And the motion to continue was not clear to me that there was the six-month versus long-term opportunity. So has Mr. Woody actually filed an application or is this just something that the city is going to bring up on its own? The ordinance says that anyone can file the application for the special use permit. It does not have to be the person to whom the special use permit is granted. And the special use permit was actually filed by the building and zoning department at the instruction of the mayor. Okay. And the application is for the long-term land use permit. Correct. I know we're going outside the record. Well, there was a motion filed. Right. So, you know, I think it's reasonable to bring it up. I mean, the motion was anticipatory because there had been no hearing. And so you couldn't say the appeals moved. Right. But it could very well be. Pick that up if somebody files something. If we get a motion. Balancing rights is a difficult task. But in this case, there is a way to meet the needs of both sides. The city of Grand City respectfully requests that either this court affirm the decision of the hearing officer or in the alternative that the appeal be dismissed and Mr. Woody be required to participate in the special use procedures. Thank you. Thank you. Okay. Ms. Bradley Barrett. Yes. Let me let me ask you first. Did you receive notice of the filing of an application for special use permit on behalf of your client? Yes. Here. And the council, you want to be heard on if that is granted by the city. Your response. I saw your response to the motion to continue. But if that special use is granted, how does it affect this case in your view? Well, the special exemption permits is for to change the nature of the land. So, for example, changing from a residential property to a agricultural property or a commercial property to change the use type. So it was filed on behalf of my client. I've continuously represented Mr. Woody for many years now. I believe it's going on for and it was filed by one of the defendants on behalf of him. And we found out through social media, actually, that it had been filed on behalf. So how is it going to affect these arguments? I do not believe that the city itself can dismiss the underlying quasi criminal fine of October 2011 because they are without jurisdiction to do so. They had to have done that by November of 2011. They had 21 days to do anything with that fine pursuant to their own ordinances. And they can't. So it does not affect these arguments today. Well, it may affect some of the arguments, but not all is what you're saying. There still may be a fine out there. Right. But as far as keeping your client's symbols of worship, it certainly would affect that. Can you agree on that? It may. It depends on how this hearing goes. And we have a plan of action that my client and I have been discussing. And we will have this one reported so that there is a good record. Bless you. Okay, I'm not sure that answered my question, but go ahead. It may affect, if he is allowed, if the city ultimately finds through its use permit process that he was allowed to have the objects of his worship, it may affect anything that would happen further. I'm going to answer one of the court's previous questions on what had happened to him citationally wise. His now wife was cited for the possession of the trash cans in the carport. At the same time, he was cited for the possession of firearms. They lived together at the time. They got married about a year later. In January of, in the winter of 2014, he was cited for the possession of a trailer, a camper. This summer, he was cited for having grass that was too long in his backyard. Again, I believe there may have been one more citation in there, but that's up, I think, so I wouldn't swear to that. So there's been at least a series of three citations during this case, maybe four. The ones for the trash can are in the name of Kiril Horsley, which was, is the homeowner. It is a substantial burden to find somebody. The original case on the compelling interest is Cantwell v. Connecticut, in which a proselytizing Jehovah's Witness was fined. It is a substantial burden to find somebody for speaking about their faith. The city argues that their, that their ordinance is valid. A mere validity is not enough to meet the compelling interest. You have to adduce a record that is much more substantial. The Winnebago case says that. When you have a fundamental right, the right to worship, you must adduce more. And that was the defendant's burden in October of 2011. There was no recording equipment. There was no record made. He was pro se at the time of the hearing, and there is, there is a spotted record. We have the hearing officer's notes, the information that was given, and was attached to the complaints. And that is what we were stuck with. Well, there's a procedure under the Supreme Court rules to prepare a bystander's record and have it certified by the hearing officer, or to have an agreed statement of facts. That was not done. I mean, nobody's stuck with having no record. There's a procedure for that. I just want to follow up. Thank you. Let me ask you one question. What relief are you asking for? I am asking that the order of October of 2011 of the hearing officer Griffith be vacated under the Illinois Religious Freedom Act and the First Amendment of the United States Constitution, that the evidence gathered therein of my client's worshipful objects in his backyard be stricken as evidence gathered in a warrantless search in favor of the poisonous tree. And that he be allowed, that it is a finding under the Illinois Religious Freedom Restoration Act that he possesses his worshipful objects. Okay. Thank you. Thank you. Ms. Anders, do you have anything else to say in light of the fact that I gave her a couple extra minutes? No, I don't. Okay. I just want to be fair. Okay. Thank you, counsel. This matter will be taken under advisement and an opinion or disposition will be issued in due course. I thank you for your arguments this morning.